UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MIKE'S CIGARS DISTRIBUTORS, INC.,
    Plaintiff,
vs.                                                    Case No. 06-C10990
MICHAEL BYELICK, an individual and            Hon. Bernard A. Friedman
MD CIGARS, LLC., an Arizona limited liability
company
        Defendant.                       /

## DECLARATION OF MICHAEL ANTHONY BYELICK

MICHAEL ANTHONY BYELICK declares the following to be true under penalty of perjury:

1. I was the founder and sole proprietor of the former "Mike's Discount Cigars" retail cigar business. I am the founder and managing member of MD Cigars, LLC. I have personal knowledge of the facts set forth herein. If called as a witness, I would testify to the same.

2. While living in San Diego, California in 1999 and working full time at another job, I started a small Internet cigar retailing business using the name "Mike's Discount Cigars" I chose this name because my name is "Mike" and I intended to sell "cigars" at "discount" prices.

3. At the time, I had never heard of Plaintiff Mike's Cigars Distributors. It wasn't until many months later when I first learned of Plaintiff's business.

4. Since the lawsuit filed against me and Mike's Discount Cigars in April, 2001, I have noticed that there are a significant number of persons or companies selling cigars using

the name "Mike," "Michael" or "Michele" on the Internet and in "brick and mortar" stores. Attached as Exhibit A are true and correct screen shots showing seven (7) current, active websites of companies located in the U.S. devoted to selling cigars under the names "**Mike's Cigars & Tobacco**," "**Big Mike's Cigars**," "**Michael's Cigars**," "**Rob & Mike's Cigars**," "**Big Mike's Cigars** [another one]," and "**Cigars by Michael**."

5. In addition, the name "Mike" is used as a trademark for cigars in at least two cases that I am aware of in the U.S.: "**Mike Ditka's Cigars**," and "**Mike's Cigar Bundle**." See screenshots of web pages describing these products attached as Exhibit B.

6. To the best of my knowledge none of the above "Mike" or "Mike's" cigar entities or products is associated with Plaintiff.

7. In late 2002 or early 2001, I received a letter from Plaintiff's counsel demanding that I cease using the name and mark "Mike's Discount Cigars" and related names and marks in my Internet cigar retailing business.

8. On April 25, 2001, Plaintiff filed a trademark infringement lawsuit against me and "Mike's Discount Cigars" in the U.S. District Court for the Eastern District of Michigan. Although I believe that I had good defenses, I could not afford to fight the lawsuit. Further, I had no intention then, now or at any time since 1999 to trade upon the name, reputation or goodwill of Mike's Cigars Distributors. We decided to try to settle the case. We did not file an Answer.

9. I had difficulty getting my attorney and counsel for Plaintiff to work on settling the case. Ultimately, I signed the *Settlement Agreement and Release* and the lawsuit was dismissed on August 20, 2001.

10. Once the *Settlement Agreement and Release* was signed, I transferred the domain names <mikesdiscountcigars.com>, <mikescigar.com> and <mikescigarshop> to Plaintiff and otherwise did everything to comply with the *Settlement Agreement and Release* as I understood it.

11. I renamed the business "MD Cigars," moved it to Yuma, Arizona and formed a limited liability of the same name. We opened a "brick and mortar" retail store for the first time, using the "MD Cigars" name. We began operating the new business using the domain name <mdcigars.com>.

12. For a phase-out period that lasted no longer than June, 2003, we used invisible references to our old names "Mike's Discount," and "Mike's" and "Cigars" on the new website. This was done so that Internet search engines could find and associate our new website with the old website, and so that our customers could find our new business. We made these references invisible to visitors to the new website so as to avoid any possibility of confusion. To alleviate any possible confusion, we also inserted a disclaimer at the bottom of each web page that read: "MD Cigars is not affiliated in anyway with Mike's Cigars Distributors."

13. By June 2003, all of these invisible references were removed from the website at www.mdcigars.com, although several references to "MIKE" and "MIKE'S" inadvertently remained in the metatags for the website until just recently. All of these have now been removed as well.

14. As of April 7, 2006, the only remaining uses or "MIKE" or "MIKES" within the website at www.mdcigars.com , visible or invisible, in metatags or otherwise, are:

- "Events" page at http://www.mdcigars.com/events.htm where "Mike's" is used in the source code for the name of a photo from "Mike's Acid Event" – a cigar tasting event;
- "Letters" page at http://www.mdcigars.com/letters.htm where "Mike" is used to address letters to Mike Byelick, or to identify one of the letter writers;
- "About Us" page at http://www.mdcigars.com/about_us.htm where "Mike" is used to refer to Mike Byelick, the man behind the business. More letters addressed to Mike Byelick appear here as well;
- "Mike Ditka Cigars" at http://www.mdcigars.com/mike_ditka_cigars.htm where this brand of cigar is offered;
- "Drew Estate Natural Cigars" page at http://www.mdcigars.com/natural.htm where Mike Byelick is identified as assisting in development of this cigar.

Screen prints of above pages are attached as Exhibit C. These uses shall be referred to collectively as the "Fair Uses."

15. After the first lawsuit was settled in August of 2001, we did not hear again from Plaintiff or its counsel until the first week of March, 2006,. I received a letter from Julie Greenberg at Gifford Krass demanding that all instances of "MIKE" or "MIKES" be removed from our website.

16. Although I disagreed with some of Ms. Greenberg's demands, especially as to the Fair Uses, I made many changes as she requested. I wrote to her on March 6, 2006, in part as follows: "I have investigated your claims of infringement and while I have found your claim not valid, I have made some adjustments to my website as the problems you found were old items in the Meta information from Mikes Discount Cigars, which I do not desire on my website...I have removed Mikes discount cigars from over 200 pages per your request, but this is as far as I go." Unfortunately, the reference to "200 pages" was a typographical error on my part; I meant to type "20 pages." There are not even 200 pages in our entire website.

17. I went on vacation on March 8, 2006 for one week thinking that the matter was resolved and that Greenberg would be sending a new settlement agreement.

18. MD Cigars and I cannot afford to defend this lawsuit, although we seem to have no choice. We have made repeated offers to settle over the last several weeks, including submitting the *Consent Judgment* attached as Exhibit D. I understand that Plaintiff rejected the Consent Judgment because it gives us the chance to be notified and to fix any violation, and because we refuse to agree to a $50,000 liquidated damages provision.

19. We have made several minor changes to our website and as of April 7, 2006. The website at www.mdcigars.com full complies with the *Consent Judgment*. If I am wrong, and Plaintiff brings it to my attention, I am happy to promptly make the necessary

changes. We do not want to infringe upon anyone's rights. On the other hand, a $50,000 damage claim would probably put us out of business.

20. We have never targeted or tried to attract the customers of Plaintiff's website or business. We only ever used "MIKE" or "MIKES" to refer to ourselves, not Plaintiff. We have never contracted with any search engine for the key words "MIKE'S CIGARS" in order to attract searchers for these key words. We checked on April 7, 2006 to see how our customers find us using search engines. We found that, for example, the top 48 key words used by search engine visitors to the www.mdcigars website in April, 2006 *do not include* any reference to "MIKE" at all – see Exhibit E, attached.

21. I am completely unaware of any instances of actual confusion, either before or after the *Settlement Agreement and Release*, or any instances in which any customer has mistaken our business for Plaintiff's business, or vice versa. We never intended, and we have no intention now or ever, to trade upon the goodwill or reputation of Plaintiff or to attract Plaintiff's customers using any unfair or infringing means.

Further Declarant sayeth not.

*[signature]*
MICHAEL ANTHONY BYELICK

Dated:  4-8-06
OAKLAND:1050541.3

## Exhibit A







## Who we are

We are a family owned and operated business that was started in 1955 by my grandfather and now I am the Third Generation in the same business. We started out as a small mom and pop grocery store wholesaler. We have grown over the years and now we are into Fine Cigars.

## The Humidor Room

We love our Humidor Room. In the opening I told you a little about our Humidor and now I will continue telling more about it.

[paragraph illegible]




[captions illegible]

2



3

